IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

SUE ANN COLE,
      Petitioner,

vs.                         Case No.:  5:16cv195/WTH/EMT

SECRETARY DEPARTMENT
OF CORRECTIONS,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (ECF No. 1).  Respondent filed an answer and relevant portions of the state court record (ECF No. 21).  The court provided Petitioner an opportunity to file a reply (*see* ECF No. 22), but she has not done so.

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by the parties, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rule 8(a), Rules Governing Section 2254 Cases.  It is further the opinion of the

undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

## I.     BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* ECF No. 21).[1]  Petitioner was charged in the Circuit Court in and for Jackson County, Florida, Case No. 2008-CF-0002, with second degree murder with a firearm (Ex. A at 1).  A jury found Petitioner guilty as charged, with additional findings that Petitioner actually possessed a firearm, that she discharged the firearm, and that death or great bodily harm was inflicted upon Danny Earl Durden as a result of the discharge (Ex. A at 19, Exs. B, C, D, E, F).  On June 24, 2008, the trial court sentenced Petitioner to life in prison, with a 25-year mandatory minimum, and with pre-sentence jail credit of 177 days (Ex A at 20–33).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D08-3198 (Ex. G).  The First DCA affirmed the judgment per curiam without written opinion on June 1, 2009, with the mandate issuing June 17, 2009 (Exs. J, K).  Cole v. State, 9 So. 3d 617 (Fla. 1st DCA 2009) (Table).

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (ECF No. 21).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

On August 10, 2009, Petitioner filed a petition for writ of habeas corpus in the First DCA, Case No. 1D09-4052, alleging ineffective assistance of appellate counsel (Ex. L).  The First DCA denied the petition on the merits on September 17, 2009 (Ex. M).  Cole v. State, 21 So. 3d 51 (Fla. 1st DCA 2009) (Mem).  Petitioner filed a motion for rehearing, a motion for appointment of counsel, and a Motion to Declare Appellant Insolvent (Exs. N, O, P).  The First DCA denied the motions on October 27, 2009 (Ex. Q).

On July 20, 2010, Petitioner filed a motion for post-conviction relief in the state circuit court, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. R at 1–23).  She filed an amended motion on October 15, 2010 (id. at 59–80).  In an order rendered December 16, 2010, the state circuit court struck the motion as facially insufficient, without prejudice to Petitioner's filing a second amended motion within thirty (30) days (id. at 81–82).  Petitioner filed a second amended motion on January 7, 2011 (id. at 83–105).  The state circuit court denied two of Petitioner's claims and directed the State to respond to two other claims (id. at 106–10).  Following the State's response (Ex. S at 397–401), the circuit court denied Petitioner's remaining claims (Ex. T at 402–06).  Petitioner appealed the decision to the First DCA, Case No. 1D12-0376 (Ex. U).  The First DCA affirmed the decision per curiam without written opinion on December 21, 2012, with the mandate issuing January 16, 2013 (Exs. W, X).  Cole v.

State, 103 So. 3d 146 (Fla. 1st DCA 2012) (Table).  Petitioner filed a petition for review in the Florida Supreme Court, Case No. SC13-32 (Ex. Y).  The Florida Supreme Court dismissed the petition for lack of jurisdiction on February 14, 2013 (Ex. Z).  Cole v. State, 110 So. 3d 440 (Fla. 2013) (Table).

On April 12, 2012, Petitioner filed a second petition for writ of habeas corpus in the First DCA, Case No. 1D12-2222, alleging ineffective assistance of appellate counsel (Ex. AA).  On May 25, 2012, the First DCA dismissed the petition as untimely, pursuant to Rule 9.141(d)(5) of the Florida Rules of Appellate Procedure (Ex. BB).  Cole v. State, 91 So. 3d 174 (Fla. 1st DCA 2012) (Mem).  Petitioner filed a motion for rehearing (Ex. CC).  The First DCA denied the motion on July 11, 2012 (Ex. DD).  Petitioner filed a petition for review in the Florida Supreme Court, Case No. SC12-2514 (Ex. EE).  The Florida Supreme Court dismissed the petition for lack of jurisdiction on December 11, 2012 (Ex. FF).  Cole v. State, 107 So. 3d 403 (Fla. 2012) (Table).

On July 11, 2014, Petitioner filed a successive Rule 3.850 motion in the state circuit court (Ex. GG at 1–13).  Petitioner also filed a motion to disqualify the trial judge (id. at 17–20).  The circuit court denied Petitioner's motion to disqualify the trial judge (id. at 21).  Petitioner filed a petition for writ of prohibition in the First DCA, Case No. 1D14-3577 (id. at 22–35).  She then filed an amended successive Rule 3.850

motion (*id.* at 36–70).  In an order rendered September 17, 2014, the state circuit court struck the amended Rule 3.850 motion as facially insufficient, without prejudice to Petitioner's filing a second amended motion within thirty (30) days (*id.* at 71).  On September 30, 2014, Petitioner filed an amended petition for writ of prohibition in the First DCA (*id.* at 72–80).  Petitioner filed an amended successive Rule 3.850 motion on October 6, 2014 (*id.* at 81–96).  On October 21, 2014, the First DCA dismissed Petitioner's petition for writ of prohibition.  <u>Cole v. State</u>, 149 So. 3d 1156 (Fla. 1st DCA 2014) (Mem).  On January 5, 2015, the state circuit court denied Petitioner's successive Rule 3.850 motion on procedural grounds and, alternatively, on the merits (*id.* at 97–99).  Petitioner appealed the decision to the First DCA, Case No. 1D15-0415 (Ex. GG at 141, Ex. HH).  The First DCA affirmed the decision per curiam without written opinion on June 1, 2015 (Ex. JJ).  <u>Cole v. State</u>, 166 So. 3d 769 (Fla. 1st DCA 2015) (Table).  The mandate issued June 29, 2015 (Ex. KK).  Petitioner filed a petition for review in the Florida Supreme Court, Case No. SC15-1139 (Ex. LL).  The Florida Supreme Court dismissed the petition for lack of jurisdiction on June 19, 2015 (Ex. MM).  <u>Cole v. State</u>, 173 So. 3d 961 (Fla. 2015) (Table).

On September 14, 2015, Petitioner filed a third petition for writ of habeas corpus in the First DCA, Case No. 1D15-4292, alleging ineffective assistance of appellate counsel (Ex. NN).  She presented the same claim she presented in her second habeas

petition in First DCA Case No. 1D12-2222 (*id.*). The First DCA dismissed the petition as unauthorized on October 20, 2015, with a warning that any future appeals or petitions challenging the criminal judgment may result in the imposition of sanctions if the court determined them to be frivolous or successive (Ex. OO). <u>Cole v. State</u>, 176 So. 3d 1021 (Fla. 1st DCA 2015) (Mem).

On January 19, 2016, Petitioner filed a motion to correct illegal sentence in the state circuit court, pursuant to Rule 3.800 of the Florida Rules of Criminal Procedure (Ex. PP). On March 10, 2016, the circuit court dismissed the motion as facially insufficient, without prejudice to Petitioner's filing an amended motion (Ex. OO).

On February 2, 2016, Petitioner filed a third Rule 3.850 motion in the state circuit court, asserting the same ineffective assistance of appellate counsel claim that she presented to the First DCA in her second and third state habeas petitions (Ex. QQ). On March 10, 2016, the circuit court dismissed the motion on jurisdictional and procedural grounds (Ex. RR).

Petitioner filed the instant federal habeas action on January 19, 2016 (ECF No. 1).

## II.    EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C.

§ 2254(b)(1),[2] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his or her claim in each appropriate state court, alerting that court to the federal nature of the claim. Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has offered the following guidance for determining whether a habeas petitioner has met the "fair presentation" requirement. In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as

---

[2] Section 2254 provides, in pertinent part:

(b)(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
    (A)  the applicant has exhausted the remedies available in the courts of the State; or
      (B) (i)  there is an absence of available State corrective process; or
        (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.

In announcing that "the substance of a federal habeas corpus claim must first be

presented to the state courts," *id.*, 404 U.S. at 278, the Court rejected the contention that

the petitioner satisfied the exhaustion requirement by presenting the state courts only

with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is insufficient to make a general

appeal to a constitutional guarantee as broad as due process to present the "substance"

of such a claim to a state court.  In Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74

L. Ed. 2d 3 (1982), the habeas petitioner was granted relief on the ground that a jury

instruction violated due process because it obviated the requirement that the prosecutor

prove all the elements of the crime beyond a reasonable doubt.  *Id.* 459 U.S. at 7 (citing

Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The

only manner in which the habeas petitioner cited federal authority was by referring to

a state court decision in which "the defendant . . . asserted a broad federal due process

right to jury instructions that properly explain state law."  Anderson, 459 U.S. at 7.

The Court expressed doubt that a defendant's citation to a state-court decision

predicated solely on state law was sufficient to fairly apprise a reviewing court of a

potential federal claim merely because the defendant in the cited case advanced a

federal claim.  *Id.*, 459 U.S. at 7 & n.3.  Furthermore, the Court clarified that such a

citation was obviously insufficient when the record satisfied the federal habeas court

that the federal claim asserted in the cited case was not the same as the federal claim

on which federal habeas relief was sought.  *Id.*

Years later the Supreme Court readdressed the "fair presentation" requirement

in Duncan v. Henry, 513 U.S. 364.  The Duncan Court strictly construed the exhaustion

requirement so as to mandate that, if state and federal constitutional law overlap in

their applicability to a petitioner's claim, the petitioner must raise his or her issue in

terms of the applicable federal right in state court in order to obtain federal review of

the issue.[3]  The Supreme Court explained,"[i]f a habeas petitioner wishes to claim that

an evidentiary ruling at a state court trial denied him the due process of law guaranteed

by the Fourteenth Amendment, he must say so, not only in federal, but in state court."

Duncan, 513 U.S. at 365–66.

In Baldwin v. Reese, the Supreme Court again focused upon the requirement

of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present'

a claim to a state court if that court must read beyond a petition or a brief (or a similar

document) that does not alert it to the presence of a federal claim in order to find

material, such as a lower court opinion in the case, that does so."  541 U.S. 27, 32, 124

---

[3] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.

S. Ct. 1347, 158 L. Ed. 2d 64 (2004). The <u>Baldwin</u> Court commented that "a litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Id.*, 541 U.S. at 32. With regard to this statement, the Eleventh Circuit stated in <u>McNair v. Campbell</u>, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion. However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" <u>McNair</u> [v. Campbell], 315 F. Supp. 2d [1277,] 1184 [(M.D. Ala. 2004)] (quoting <u>Vasquez v. Hillery</u>, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)). This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302–03 (citations omitted).[4]

_____

[4] In his initial brief before the Court of Criminal Appeals, the petitioner cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." <u>McNair v. Campbell</u>, 416 F.3d 1291, 1303 (11th Cir. 2005). The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on

An issue that was not properly presented to the state court and which can no

longer be litigated under state procedural rules is considered procedurally defaulted,

i.e., procedurally barred from federal review.  Bailey v. Nagle, 172 F.3d 1299, 1302–03

(11th Cir. 1999).  This court will also consider a claim procedurally defaulted if it was

presented in state court and rejected on the independent and adequate state ground of

procedural bar or default.  *See* Coleman v. Thompson, 501 U.S. 722, 734–35 & n.1,

111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th

Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law

cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324,

1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by

federal court even as to a claim which has never been presented to a state court);

*accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d

1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed.

2d 812 (1991).  In the first instance, the federal court must determine whether any

future attempt to exhaust state remedies would be futile under the state's procedural

default doctrine.  Bailey, 172 F.3d at 1303.  In the second instance, a federal court must

determine whether the last state court rendering judgment clearly and expressly stated

---

state law for his arguments.  *Id*.

its judgment rested on a procedural bar.  *Id.*  A federal court is not required to honor

a state's procedural default ruling unless that ruling rests on adequate state grounds

independent of the federal question.  *See* <u>Harris v. Reed</u>, 489 U.S. 255, 109 S. Ct. 1038,

103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of

a federal question is itself a federal question.  <u>Lee v. Kemna</u>, 534 U.S. 362, 122 S. Ct.

877, 151 L. Ed. 2d 820 (2002).

The Eleventh Circuit has set forth a three-part test to determine whether a state

court's procedural ruling constitutes an independent and adequate state rule of

decision.  <u>Judd v. Haley</u>, 250 F.3d 1308, 1313 (11th Cir. 2001).  First, the last state

court rendering judgment must clearly and expressly state it is relying on state

procedural rules to resolve the federal claim.[5]  *Id.*  Second, the state court's decision

on the procedural issue must rest entirely on state law grounds and not be intertwined

with an interpretation of federal law.  *Id.*  Third, the state procedural rule must be

adequate.  *Id.*  The adequacy requirement has been interpreted to mean the rule must

be firmly established and regularly followed, that is, not applied in an arbitrary or

unprecedented fashion.  *Id.*

---

[5] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits.  <u>Marek v. Singletary</u>, 62 F.3d 1295, 1302 (11th Cir. 1995); <u>Alderman v. Zant</u>, 22 F.3d 1541, 1549 (11th Cir. 1994).

To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim. Tower, 7 F.3d at 210; Parker, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)). To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." Schlup, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

Id. Although a habeas petitioner asserting a convincing claim of actual innocence need not prove diligence to overcome a procedural bar, timing is a factor relevant in

evaluating the reliability of a petitioner's proof of innocence.  *See* <u>McQuiggin v.</u>

<u>Perkins</u>, — U.S. —, 133 S. Ct. 1924, 1935, 185 L. Ed. 2d 1019 (2013).  As the Court

stated in <u>Schlup</u>, "[a] court may consider how the timing of the submission and the

likely credibility of [a petitioner's] affiants bear on the probable reliability of . . .

evidence [of actual innocence]."  513 U.S. at 332; *see also* <u>House v. Bell</u>, 547 U.S. 518,

537, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006).

    Within this framework, the court will review Petitioner's claim.

III.    PETITIONER'S CLAIM

    <u>Ground One</u>:  "The jury instruction on a lesser offense of manslaughter
instructing that the State must prove that the (defendant) this [sic] Petitioner
intentionally caused death of the victim violated the law.  The State of Florida
is not required to prove this in order to establish this as to that jury instruction."

    Petitioner challenges her conviction on the ground that the jury instruction on

manslaughter violated her Fifth, Sixth, Eighth, and Fourteenth Amendment rights (ECF

No. 1 at 5, 16–21).  Petitioner states she did not present this issue on direct appeal of

her conviction, because her appellate counsel was ineffective (*id.* at 5).  Petitioner

asserts that she raised the issue in her second amended Rule 3.850 motion (*id.*).

    Respondent contends Petitioner's claim is unexhausted and procedurally barred

(ECF No. 21 at 14–15).  Respondent contends Petitioner failed to raised the issue on

direct appeal, and now is procedurally barred from returning to state court to exhaust

the claim (*id.* at 4–8).  Respondent further contends Petitioner cannot assert ineffective

assistance of appellate counsel ("IAAC") as cause for the procedural default, because

Petitioner did not properly present the IAAC claim to the state courts (*id.* at 18–20).

Respondent asserts Petitioner presented the IAAC claim to the First DCA in her second

state habeas petition, but the state court properly dismissed it as untimely (*id.*).

Additionally, Respondent contends that to the extent Petitioner presents a claim

of ineffective assistance of trial counsel ("IATC") with respect to counsel's failure to

object to the manslaughter instruction, the state court's adjudication of the claim

(presented as Ground 4 of Petitioner's Second Amended Rule 3.850 motion) was not

contrary to or an unreasonable application of clearly established federal law (*id.* at

15–18).

A.    Trial Court Error

Petitioner's claim of trial court error is procedurally barred from federal review.

In Florida, claims of error with respect to jury instructions are properly raised on direct

appeal.  Pooler v. State, 980 So. 2d 460 (Fla. 2008).  Petitioner did not present a claim

of error with respect to the jury instructions on direct appeal (*see* Ex. G); therefore,

Petitioner must demonstrate cause for her failure to do so. Petitioner has not

established cause for her default.  Although ineffective assistance of counsel which

rises to the level of a constitutional deprivation can serve as cause for purposes of a

procedural default analysis, the issue of ineffective assistance must first be presented as an independent state claim and exhausted in the state courts.  Murray, 477 U.S. at 488; Orazio v. Dugger, 876 F.2d 1508 (11th Cir. 1989).  In Florida, a claim of IAAC is actionable in a petition for writ of habeas corpus filed in the appellate court to which the appeal was taken.  *See* Fla. R. App. P. 9.141(d); Davis v. State, 875 So. 2d 359, 372 (Fla. 2003).  Here, Petitioner did not present a claim of IAAC based upon appellate counsel's failure to raise the jury instruction issue to the First DCA in her first state habeas petition, which was the only state habeas petition that the First DCA addressed on the merits (*see* Exs. L, M).  And although Petitioner presented the IAAC claim to the First DCA in her second and third state habeas petitions, those petitions were untimely and successive.  Therefore, Petitioner's IAAC claim may not serve as cause for the procedural default of her claim of trial court error.  Petitioner is not entitled to a federal merits review of the claim presented in the § 2254 petition.

    B.    Ineffective Assistance of Trial Counsel

    Respondent addresses a claim of IATC, based upon trial counsel's failure to object to the manslaughter instruction, presumably because Petitioner stated in her § 2254 petition that she presented her claim of trial court error in the first Rule 3.850 proceeding (*see* ECF No. 21 at 15–18; ECF No. 1 at 5).  The record demonstrates that Petitioner did not present a claim of trial court error in her first Rule 3.850 proceeding;

instead, she presented only IATC claims, and the state court addressed only those claims (*see* Ex. R at 83–110; Ex. S at 397–401; Ex. T at 402–06). Petitioner's merely referencing the Rule 3.850 proceeding does not equate to her presenting a IATC claim in her § 2254 petition.

As the Eleventh Circuit recently reminded the district courts, "Habeas petitioners must specify the grounds on which they assert that they are entitled to relief." Reaves v. Sec'y, Fla. Dep't of Corr., — F.3d —, 2017 WL 4318594, at *8 (11th Cir. Sept. 28, 2017) (citing Rules Governing § 2254 Cases in the United States District Courts, Rule 2(c)(1) ("The [§ 2254] petition must: (1) specify all the grounds for relief available to the petitioner . . . .")). "To prevail on a particular theory of liability, a party must present that argument to the district court. Our adversarial system requires it; district courts cannot concoct or resurrect arguments neither made nor advanced by the parties." Fils v. City of Aventura, 647 F.3d 1272, 1284 (11th Cir. 2011) (citation omitted); *see also* Maradiaga v. United States, 679 F.3d 1286, 1293–94 (11th Cir. 2012) ("[D]istrict courts cannot concoct or resurrect arguments neither made nor advanced by the parties. That federal courts can take notice of [the law] does not mean that a party . . . need not cite it to the court or present argument based upon it, or that federal courts must scour the law . . . for possible arguments a [party] might have made.") (citation and quotation marks omitted).

Petitioner's § 2254 petition did not mention an IATC claim based upon trial counsel's failure to object to the manslaughter instruction; instead, her sole argument in her habeas petition is that fundamental error occurred during her trial by virtue of the trial court's giving the standard manslaughter instruction (ECF No. 1 at 5, 16–21). Even if Petitioner raised and exhausted an IATC claim concerning the manslaughter instruction in her first Rule 3.850 proceeding, she was required to raise the IATC claim in her § 2254 petition if she wanted federal relief on it.  *See* Rules Governing § 2254 Cases, Rule 2(c)(1); <u>Fils</u>, 647 F.3d at 1284.  As the Eleventh Circuit stated in <u>Reaves</u>:

> A petitioner who has exhausted a claim in [her] state collateral proceedings is free to challenge the state courts' resolution of that claim by asserting it in his federal proceeding.  If [she] chooses not to assert that claim, however, the district court should abide by [her] choice and not assert the claim for [her]. . . . A federal habeas court may not take over a petitioner's case and impose its own view of the claims that should be raised.  Allowing a court to do so would blur the line between judge and advocate.

2017 WL 4318594, at *9 (citations omitted).

Because Petitioner has not presented any claim to this district court about trial counsel's failure to object to the manslaughter instruction, this court should not present the claim for her.  Instead, the court should review and decide only the claim Petitioner pleaded, i.e., that the trial court's giving the standard jury instruction on manslaughter violated Petitioner's federal constitutional rights.

However, in anticipation that Petitioner (who the First DCA deemed not only an active litigant but borderline abusive) may attempt to assert an IATC claim in either her objections to this Report and Recommendation or a late-filed amendment of her petition, the undersigned will include a discussion of the IATC claim.

      1.     Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). To obtain relief under <u>Strickland</u>, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 687–88. If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697.

The focus of inquiry under the performance prong of <u>Strickland</u> is whether counsel's assistance was reasonable considering all the circumstances and under prevailing professional norms. <u>Strickland</u>, 466 U.S. at 688–89, 691. "The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." <u>Jones v. Campbell</u>, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing <u>Chandler v. United States</u>, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)). "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to

reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." <u>Strickland</u>, 466 U.S. at 689. "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ." <u>Michael v. Crosby</u>, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting <u>Chandler</u>, 218 F.3d at 1317). "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." <u>Rogers v. Zant</u>, 13 F.3d 384, 386 (11th Cir. 1994).

As to the prejudice prong of the <u>Strickland</u> standard, Petitioner's burden of demonstrating prejudice is high. *See* <u>Wellington v. Moore</u>, 314 F.3d 1256, 1260 (11th Cir. 2002). To establish prejudice, Petitioner must show "that every fair-minded jurist would conclude 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" <u>Jones v. GDCP Warden</u>, 753 F.3d 1171, 1184 (11th Cir. 2014) (quoting <u>Strickland</u>, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome," not that counsel's conduct more likely than not altered the outcome of the proceeding. *Id.* (citation omitted). And Petitioner must show that the likelihood of a different result is substantial, not just conceivable. <u>Williamson v. Fla. Dep't of Corr.</u>, 805 F.3d 1009, 1016 (11th Cir. 2015) (citing <u>Richter</u>, 562 U.S. at 112). "When

a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Strickland, 466 U.S. at 695. The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. *Id.* at 694–95. Further, when the claimed error of counsel occurred at the guilt stage of trial (instead of on appeal), Strickland prejudice is gauged against the outcome of the trial, not on appeal. *See* Purvis v. Crosby, 451 F.3d 734, 739 (11th Cir. 2006) (citing Strickland, 466 U.S. at 694–95).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. Strickland, 466 U.S. at 698; Collier v. Turpin, 177 F.3d 1184, 1197 (11th Cir. 1999). "Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). "Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult." Richter, 131 S. Ct. at 788. As the Richter Court explained:

The standards created by <u>Strickland</u> and § 2254(d) are both "highly
deferential," and when the two apply in tandem, review is "doubly" so.
The <u>Strickland</u> standard is a general one, so the range of reasonable
applications is substantial.   Federal habeas courts must guard against the
danger of equating unreasonableness under <u>Strickland</u> with
unreasonableness under § 2254(d). When § 2254(d) applies, the question
is not whether counsel's actions were reasonable.   The question is
whether there is any reasonable argument that counsel satisfied
<u>Strickland</u>'s deferential standard.

*Id.* (citations omitted).

### 2.    Federal Review of State Court Decision

Petitioner raised an IATC claim concerning the manslaughter instruction as

Ground 4 in her Second Amended Rule 3.850 motion (Ex. R at 97–99).   The state

circuit court adjudicated the claim as follows:

In Ground 4, Defendant alleges that counsel was ineffective for
failing to object to an incorrect jury instruction on manslaughter by act
and failing to request a corrected jury instruction.   The Defendant
complains that the manslaughter instruction given instructed the jury that
the State must prove that the defendant intentionally caused death of the
victim, which she argues is erroneous and has been consistently deemed
fundamental error by the First District Court of Appeal.

The Defendant is referring to the line of cases that began with the
First DCA's opinion in <u>Montgomery v. State</u>, — So. 2d —, 34 Fla. L.
Weekly D360, 2009 WL 350624 (Fla. 1st DCA 2009), in which the First
District held that the State is not required to prove intent to kill in order
to establish the crime of manslaughter by act, and that when the trial
court instructed the jury (pursuant to the standard jury instruction for
manslaughter by act) that in order to prove manslaughter, the State had
to prove that the defendant intentionally caused the victim's death,
fundamental error occurred.   The Florida Supreme Court ultimately

upheld the First DCA's decision and amended the standard jury instruction for manslaughter by act. *See State v. Montgomery*, 39 So. 3d 252 (Fla. 2010); *In re Amendments to Standard Jury Instructions in Criminal Cases–Instruction 7.7*, 41 So. 3d 853 (Fla. 2010). However, prior its *Montgomery* decision, the First DCA had not issued an opinion holding that intent to kill is not an element of manslaughter by act, and had not said that the standard jury instruction for manslaughter by act was erroneous. Here, the Defendant's trial was held on June 5, 2008. As a result, her trial counsel had no way of knowing at the time of trial that the First DCA would hold as it did in *Montgomery* in 2009, or that the Florida Supreme Court would ultimately uphold that decision and amend the standard jury instruction in 2010. Therefore, it is not deficient performance for counsel to fail to object to a standard jury instruction that has not been invalidated by the Florida Supreme Court. *See Lukehart v. State*, — So. 3d —, 36 Fla. L. Weekly 8297, 2011 WL 2472801 at *12 (Fla. June 23, 2011); *Griffin v. State*, 866 So. 2d 1, 15 (Fla. 2003); *Thompson v. State*, 759 So. 2d 650, 665 (Fla. 2000).

. . . .

Finally, the Defendant suggests in her argument that counsel should have predicted the outcome in *Montgomery* because the First DCA had been invalidating manslaughter instructions for at least 6 years before her trial, citing to *Hankerson v. State*, 831 So. 2d 235 (Fla. 1st DCA 2002). However, the *Hankerson* decision was based on the specific language of the aggravated manslaughter of a child subsection of the statute that the court was instructing the jury on, and the fact that it did not include an intention [sic] act element. *See* Fla. Stat. § 782.07(3). Therefore, it did not foreshadow what would later occur in *Montgomery* with regard to the regular manslaughter by act jury instruction based upon Fla. Stat. § 782.07(1). Even more noteworthy, the Florida Supreme Court did not amend the standard jury instruction for manslaughter by act in the years following the *Hankerson* decision. Based upon the foregoing, the Defendant's allegations and arguments contained within Ground 4 are denied.

(Ex. T at 404–05). The First DCA affirmed the decision without written opinion (Ex.

W).

At the time of Petitioner's trial, no Florida appellate court had held that the then standard jury instruction on manslaughter-by-act, as approved by the Florida Supreme Court, was error, much less fundamental error.  The standard instruction given in Petitioner's trial was approved by the Florida Supreme Court and had been in use since 1994.  *See* Standard Jury Instructions in Criminal Cases (93–1), 636 So. 2d 502 (Fla.1994); In re Standard Jury Instructions in Criminal Cases–No. 2006–1, 946 So. 2d 1061, 1062 (Fla. 2006).

Some eight months after Petitioner's trial, the First DCA decided Montgomery v. State (Montgomery I), 70 So.3d 603 (Fla. 1st DCA 2009). Montgomery I held that a jury instruction tracking the language of Florida's 2006 standard jury instruction for manslaughter-by-act (the same jury instruction given in Petitioner's case) improperly imposed an additional element (an intent to kill rather than merely an intent to do the act that caused the death of the victim) to the offense of manslaughter-by-act.  The First DCA further held that giving the erroneous instruction as a lesser-included offense of second-degree murder constituted fundamental error because "the jury was prevented from returning a verdict for manslaughter, even though, through its verdict of second-degree murder, it found that Appellant did not intend to kill the victim." Montgomery I, 70 So. 3d at 604, 607–08.  In reaching the conclusions that the jury was prevented from returning a verdict of manslaughter and that the erroneous instruction

constituted fundamental error, the First DCA relied on <u>Hankerson v. State</u>, 831 So. 2d

235 (Fla. 1st DCA 2002), a case where the court found fundamental error in the trial

court's inclusion of an element of intent in its jury instruction on aggravated

manslaughter as a lesser-included offense of second-degree murder. <u>Montgomery I</u>,

70 So. 3d at 607–08.  The First DCA in <u>Montgomery I</u> explained:

> In *Hankerson*, we concluded that "[t]he addition of an element regarding
> a lesser included offense . . . taints the underlying fairness of the entire
> proceeding."  831 So. 2d at 237.  In finding fundamental error, we
> observed that the jury in *Hankerson* "may not have returned a verdict as
> to a lesser included offense because it found there was insufficient proof
> of intent to kill." *Id.*  This language applies precisely to the instant case.
> Appellant has correctly identified the nature of the errors in *Hankerson*
> and the instant case:
>
>> [I]f the jury found the defendant did not intend to kill, the
>> erroneous instruction effectively precluded the jury from
>> choosing between two possible verdicts:  second degree
>> murder or manslaughter by act.   Under the erroneous
>> instruction, the jury was directed to pick the greater of these
>> two offenses . . . .  Such interference with the jury's
>> deliberative process tainted the underlying fairness of the
>> entire proceeding.
>
> Because the jury in the instant case found that Appellant did not intend
> to kill the victim, we are constrained, under the authority of *Hankerson*,
> to reverse Appellant's conviction for second-degree murder and remand
> the case for a new trial consistent with this opinion.

Montgomery I, 70 So. 3d at 607–08.  The Florida Supreme Court approved the

Montgomery I decision on April 8, 2010.  Montgomery v. State (Montgomery II), 39

So. 3d 252 (Fla. 2010).

This time line demonstrates that it was not until after Petitioner's trial that the

First DCA held that the standard manslaughter-by-act jury instruction was erroneous

and that its use qualified as fundamental error.  Petitioner nonetheless claimed in state

court that trial counsel's failure to anticipate the First DCA's subsequent decision in

Montgomery I constituted ineffective assistance.  Trial counsel's failure to anticipate

a change in the law concerning the standard jury instruction for manslaughter-by-act

is not objectively unreasonable and does not constitute ineffective assistance of

counsel.  *See* Spaziano v. Singletary, 36 F.3d 1028, 1039 (11th Cir. 1994) ( "[W]e have

held many times that reasonably effective representation cannot and does not include

a requirement to make arguments based on predictions of how the law may develop.")

(quotations and alterations omitted); Jackson v. Herring, 42 F.3d 1350, 1359 (11th Cir.

1995) ("To be effective within the bounds set by Strickland, an attorney need not

anticipate changes in the law."); Funchess v. Wainwright, 772 F.2d 683, 691 (11th Cir.

1985) ("The failure of counsel to anticipate that an otherwise valid jury instruction

would later be deemed improper by the state judiciary does not constitute ineffective

assistance of counsel.").

Moreover, Petitioner's trial counsel could not have relied upon Hankerson in support of an objection to the manslaughter instruction, because as the state post-conviction court pointed out, Hankerson did not address the manslaughter-by-act instruction given in Petitioner's case; rather, it addressed an instruction for aggravated manslaughter.  The Montgomery I court relied on Hankerson not for the proposition that the manslaughter-by-act jury instruction was erroneous, but for the proposition that the nature of the error was fundamental.  Petitioner's trial counsel was not ineffective for failing to anticipate that Florida courts would eventually conclude the standard manslaughter-by-act jury instruction used in Petitioner's trial was erroneous.

Petitioner failed to demonstrate that the state court's adjudication of her IATC claim, based upon counsel's failure to object to the erroneous manslaughter instruction, was based upon an unreasonable determination of fact, or was contrary to or an unreasonable application of Strickland.  Therefore, even if Petitioner presented this IATC claim in her § 2254 petition, which she did not, she would not be entitled to federal habeas relief.

## IV.   CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is

issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a).  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  28 U.S.C. § 2254 Rule 11(b).

"Section 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'"  Miller-El v. Cockrell, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (quoting § 2253(c)(2)).  "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'"  Buck v. Davis, 580 U.S.—, 137 S. Ct. 773 (2017) (citing Miller-El, 537 U.S. at 327).  The petitioner here cannot make that showing.  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of  Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Case No.:  5:16cv195/WTH/EMT

Accordingly, it is respectfully **RECOMMENDED**:

1.    That the petition for writ of habeas corpus (ECF No. 1) be **DENIED**.

2.    That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 18ᵗʰ day of October 2017.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**